UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADLEY MEDINA, *et al.*,<br><br>  Plaintiff,<br><br>  v.<br><br>COURTNEY L. MAPES, M.D.,<br><br>  Defendant. | Case No. 1:21-cv-00844-JLT-EPG<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART<br><br>(ECF No. 52) |

Plaintiffs Bradley Medina and Svetlana Krivencheva allege claims for medical negligence, lack of informed consent, and loss of consortium against Defendant Courtney L. Mapes, M.D. Defendant now moves for summary judgment on Plaintiffs' claims. (ECF No. 52). Plaintiffs oppose. (ECF No. 62). In reply, Defendant objects to Plaintiffs' expert reports. (ECF No. 63).

For the reasons explained below, the Court recommends that Defendant's motion for summary judgment be denied, in part.[1]

///

///

///

---

[1] The motion was referred to the undersigned by the assigned district judge for the preparation of findings and recommendations. (ECF No. 61).

1

## I.     BACKGROUND

On May 25, 2021, Plaintiffs filed a complaint alleging tort claims for medical negligence, lack of informed consent, and loss of consortium against the United States of America and Defendant pursuant to the Federal Tort Claims Act, 28 U.S.C. §§2671, *et seq.*[2] (ECF No. 1).

Plaintiff Medina generally alleges that on February 8, 2019, he sought treatment from Defendant "due to redness and swelling from the top of his leg at the groin area to the knee and below the knee." (ECF No. 1 at 3). Plaintiff Medina alleges that Defendant incorrectly diagnosed him with a hamstring pull. (*Id.*) Plaintiff was "subsequently hospitalized two weeks later with severe pain, redness and swelling in his leg, which was diagnosed [as] necrotizing fasciitis that required surgery and resulted in a significant loss of tissue." (*Id.*) Plaintiff Medina also alleges that Defendant failed to inform him of the "specific dangers, consequences and hazards involved in the care and treatment" performed by Defendant, and that, had Defendant informed Plaintiff Medina of these risks, Plaintiff would not have undergone the care and treatment. (*Id.* at 4). As a result of Defendant's tortious conduct, Plaintiff alleges that he has suffered physical injury, emotional distress, and mental suffering. (*Id.* at 3-4).

Plaintiff Krivencheva alleges that, due to the physical and emotional injuries caused by Defendant's tortious conduct, Plaintiff Medina "has been unable to perform the necessary duties as a husband and the work and services usually performed in the care, maintenance and management of the family and home . . . and will be unable to perform such work, services, and duties in the future." (*Id.* at 4).

On July 31, 2023, Defendant filed a motion for summary judgment. (ECF No. 52). On September 15, 2023, Plaintiffs filed an opposition, relying largely on medical expert opinions. (ECF No. 62). Defendant filed a reply that objects to Plaintiffs' evidence and asks the Court to strike Plaintiffs' photographic exhibits and expert reports. (ECF No. 63).

Because Plaintiffs' expert reports did not comply with Rule 56 of the Federal Rules of Civil Procedure, in part because the expert declarations were not signed "under penalty of perjury," and because Plaintiffs proceed *pro se*[3], the Court provided Plaintiffs an opportunity to

---

[2] The United States was dismissed pursuant to the parties' stipulation under Federal Rule of Civil Procedure 41(a)(1)(A). (ECF Nos. 13, 14).

[3] Although Plaintiffs commenced this action through counsel, they now proceed *pro se* after the Court

submit amended, compliant expert reports. (ECF No. 65). On April 29, 2024, Plaintiffs filed amended reports. (ECF No. 66). However, the reports were still not signed under penalty of perjury. Accordingly, the Court issued findings and recommendations on the record before it, recommending that Defendant's motion to strike and motion for summary judgment be granted. (ECF No. 67). Plaintiffs filed objections to the Court's findings and recommendations which included expert affidavits signed under penalty of perjury. (ECF No. 68). After considering the objections of both Plaintiffs and Defendant (ECF No. 69), the Court vacated its findings and recommendations to consider Plaintiffs' amended expert reports. (ECF No. 71).

## II.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.     Undisputed Facts[4]

Plaintiff Medina was treated by Defendant at Family Health Care Network[5] on February 8, 2019. (SUF No. 3). Upon evaluating Plaintiff Medina, Defendant assessed that Plaintiff Medina had a strained muscle, fascia, and tendon of the posterior muscle group at the thigh level in his right thigh. (SUF No. 4). Defendant instructed Plaintiff Medina to ice his leg, referred him to physical therapy, and prescribed pain medication and crutches. (SUF No. 5). Plaintiff Medina did not present to Defendant for any further care or treatment after February 8, 2019. (SUF No. 6).

On February 23, 2019, Plaintiff Medina presented to the Maj Medical Clinic with complaints of pain and swelling in his right thigh. (SUF No. 7). Plaintiff Medina was diagnosed with cellulitis[6] and an abscess. (*Id.*) Plaintiff Medina was transported by ambulance to the emergency department at Kaweah Delta Medical center to rule out osteomyelitis[7]. (SUF No. 8). A CT scan was performed and showed fluid collection in the posterior right thigh. (SUF No. 9).

On February 25, 2019, Plaintiff Medina underwent an incision and debridement

---

granted counsel's motion to withdraw. (ECF No. 43).

[4] The facts set forth in this section are drawn from facts asserted in Defendant's statement of the undisputed facts that are also explicitly undisputed by Plaintiffs. Although Plaintiffs have offered additional facts that purport to dispute Defendant's undisputed facts as set forth in this section, the Court finds that Plaintiff's additional facts do not create a relevant dispute of material fact.

[5] As alleged in Plaintiffs' complaint, Family Healthcare Network is a healthcare facility located in Visalia, California, and operated by non-party the United States of America. (ECF No. 1 at 2).

[6] "Cellulitis refers to a bacterial skin infection." (Decl. of Dr. Posalski, ECF No. 52-4 at 4, n.2).

[7] "Osteomyelitis refers to bone infection/inflammation." (Decl. of Dr. Posalski, ECF No. 52-4 at 4, n.3).

procedure. (SUF No. 10). The surgeon's post-operative diagnosis was "necrotizing soft tissue infection and myositis[8]." (SUF No. 11). An additional procedure was performed on February 27, 2019. (SUF No. 12). Plaintiff Medina was hospitalized for intravenous antibiotic therapy and additional medical attention for diabetes and high blood pressure. (*Id.*) Plaintiff Medina was discharged from the hospital on March 7, 2019. (SUF No. 13).

### B. Defendant's Motion

On July 31, 2023, Defendant filed a motion for summary judgment. (ECF No. 52). Defendant argues that she is entitled to summary judgment because she did not breach the standard of care in treating Plaintiff Medina and because "there is nothing Dr. Mapes did or did not do that was, to a reasonable degree of medical probability, a substantial factor in causing harm or injury to Mr. Medina." (ECF No. 52-1 at 6-8). Defendant also argues that she had no duty to disclose information about non-recommended procedures because "competent medical practice did not require that Dr. Mapes recommend any of the other procedures Plaintiff may insist that he needed." (*Id.* at 9-11). Further, Defendant contends that Plaintiff Krivencheva's loss of consortium claim fails as a matter of law "[i]n the absence of tortious injury to Mr. Medina." (*Id.* at 11-12).

In support, Defendant submits the declarations of two medical experts and excerpts of Plaintiff Medina's medical records. Defendant submits the declaration of her medical expert, Richard A. Johnson, M.D., to establish that Defendant's care and treatment of Plaintiff complied with the applicable standard of care at all relevant times. (ECF No. 52-3). Dr. Johnson opines that Defendant met the applicable standard of care when she diagnosed Plaintiff Medina with a muscle strain:

> There is nothing contained in the medical records I reviewed to suggest that Dr. Mapes should have diagnosed Mr. Medina with an infection in his right leg when she saw him on February 8, 2019. According to the office visit note from February 8, 2019, Mr. Medina's chief complaint was leg pain, and he gave a history for having pulled his right hamstring approximately one week earlier. Visual inspection of Mr. Medina's right leg did not reveal any open wounds, and there was no noticeable swelling, redness, or abnormal tightness on palpation noted by Dr. Mapes. In addition, a circulatory issue did not appear to be implicated given Mr. Medina's normal capillary refill as charted by Dr. Mapes. Finally, while Mr.

---

[8] "Myositis refers to any condition that causes inflammation in the muscles." (Decl. of Dr. Posalski, ECF No. 52-4 at 5, n.4).

4

> Medina complained of 10/10 pain and was using a wheelchair while at the clinic to see Dr. Mapes, his vital signs, including his temperature, blood pressure and pulse, were inconsistent with severe pain of 10/10. Hence, Dr. Mapes could reasonably infer based on Mr. Medina's history and his physical presentation that the patient's problem was musculoskeletal in nature and not infectious.
>
> Accordingly, Dr. Mapes' diagnostic impression for muscle strain involving the posterior muscle group was reasonable. Her recommendation to apply of ice and take Ibuprofen as well as the prescriptions for physical therapy and crutches, were also a highly reasonable approach to Mr. Medina's presentation. Given Mr. Medina's reported history of a hamstring pull one week earlier, coupled with the absence of pertinent positive findings on exam, one would simply not suspect on February 8, 2019 that Mr. Medina had a serious infectious problem ongoing that required more significant workup and/or specialist referrals.
>
> In light of the foregoing, it is my medical opinion that Dr. Mapes met the applicable standard of care at all times in connection with the care and treatment she rendered to Mr. Medina on February 8, 2019. Further, there is no evidence that the treatment Dr. Mapes provided to Mr. Medina, caused any injury to Mr. Medina.

(ECF No. 52-3 at 5-6). Further, Dr. Johnson asserts that "the standard of care does not require Dr. Mapes to disclose potential risks associated with non-recommended treatment or procedures that she did not believe were medically indicated." (*Id.* at 6).

Defendant also submits the declaration of her causation medical expert, Irving Posalski, M.D., F.A.C.P. (ECF No. 52-4). Dr. Posalski opines that there was "nothing that Dr. Mapes either did or did not do that was a substantial factor, to a reasonable degree of medical probability, in causing harm or injury to Mr. Medina." (*Id.* at 5). According to Dr. Posalski:

> a. It is my opinion, to a reasonable degree of medical probability, that had Mr. Medina been diagnosed with an infection on February 8, 2019 when he saw Dr. Mapes at Family Health Care Network, it still would not have prevented him from having to undergo surgery to drain the infection in his leg, and he would have required IV antibiotics.
>
> b. Dr. Mapes' office notice reflects that a physical examination of the leg was "grossly normal," and there is no mention of any redness, swelling or other visible signs suggestive of an infection. Though there was diffuse tenderness to the back of the thigh, Mr. Medina was still able to extend and flex his leg at the knee. Dr. Mapes documented that his range of motion was somewhat limited but attributed this finding to pain. Mr. Medina's temperature was documented as normal.
>
> c. By the time of Mr. Medina's next documented medical visit on February 23, 2019 at Maj Medical Clinic, Mr. Medina had new complaints of swelling in his right leg and a rash/peeling skin. He claimed his pain had gradually worsened over

    the past two weeks, which is indicative that the infection progressed in that time frame. After Mr. Medina was taken by ambulance to Kaweah Delta later in the day on February 23, 2019, he again told the hospital providers that his pain had worsened over the past two weeks. Labs drawn at Kaweah Delta demonstrated that his diabetes was out of control with a glucose level of 285 and an A1c of 11.1.

    e. The foregoing signifies that, at the time Dr. Mapes saw Mr. Medina on February 8, 2019, the infection was in its early stages and located deep in the muscle and fascia. Had it been a superficial infection or abscess, there would be redness, swelling or other observable evidence at the time he saw Dr. Mapes. Based on Mr. Medina's presentation at Kaweah Delta, although the infection was in its early stages as of February 8, 2019 it was still extensive, meaning that Mr. Medina would have required IV antibiotics and irrigation and debridement regardless of when the infection was first appreciated. The infection was not treatable with oral antibiotics as of February 8, 2019 because of its deep location in the leg.

(ECF No. 52-4 at 5-6). Dr. Posalski also asserts that Plaintiff Medina's complaints of ear infections, hearing loss, and problems with mentation, memory, and other neurological changes "have no causative nexus to the infection in his leg." (*Id.* at 6-7).

### C. Plaintiffs' Opposition

On September 15, 2023, Plaintiffs filed an opposition to Defendant's motion. (ECF No. 62).[9] Plaintiffs argue that Defendant's motion must be denied because there are triable issues of fact as to the standard of care and causation. (*Id.* at 22-27). Plaintiffs further argue there is a triable issue of fact as to whether Plaintiff Medina presented to Defendant with symptoms that medically indicated more serious conditions, and thus, there is a dispute of fact as to whether Defendant breached her duty to inform Plaintiff of the risks associated with not undergoing further diagnostic procedures. (*Id.* at 27-30). Further, because there are triable issues of fact as to Plaintiff Medina's claims, Plaintiffs contend that Defendant is not entitled to judgment as a matter of law as to Plaintiff Krivencheva's loss of consortium claim. (*Id.* at 30-31).

In support of Plaintiffs' opposition, Plaintiffs submit two expert reports and photographs of Plaintiff's right leg "that shows it's current physical and visual condition." (ECF No. 62 at 1-20). Plaintiffs submit the expert report of Mark Needham, M.D. (ECF No. 62 at 56-61). Dr. Needham's expert report states that "[t]he history of gradual onset of pain without a recalled

---

[9] Plaintiffs filed an initial request for an extension of the opposition deadline on August 4, 2023. (ECF No. 57). The assigned district judge denied in part Plaintiff's initial request. (ECF No. 58). Plaintiffs filed an amended motion for an extension of time to file their opposition. (ECF No. 59). The assigned district judge granted Plaintiffs a thirty-day extension. (ECF No. 61).

history is not consistent with a hamstring injury" and "a hamstring injury in the absence of a recalled stress, trauma, injury, or athletic endeavor is highly unusual." (*Id.* at 58-59). Dr. Needham also states that "it would be highly unusual for a patient with a hamstring injury to report the pain at the maximum on the scale" and that "[s]evere pain, rated as 10/10 in this case, is not consistent with a hamstring injury." (*Id.*) Further, Dr. Needham asserts that "[t]enderness over the entire hamstring is not consistent with a hamstring injury." (*Id.* at 59).

Dr. Needham's expert report states that Defendant violated the standard of care because Defendant "did not consider the far more serious diagnosis of deep tissue infection," which was a high risk for Plaintiff Medina as a "poorly controlled diabetic patient." (ECF No. 62 at 59). Further, Defendant's diagnosis of "muscle injury" was inconsistent with Plaintiff's history or the physical exam. (*Id.*). Dr. Needham's report states that the standard of care required Defendant to consider other diagnoses because Plaintiff Medina's medical history and Defendant's physical exam of Plaintiff Medina were not consistent with a "muscle injury." (*Id.*). According to Dr. Needham, under these circumstances, the standard of care required Defendant to order blood work to assess possible infection or a CT/MRI of Plaintiff's thigh "which would have shown deep tissue infection." (*Id.* at 59-60). Dr. Needham further asserts that, at minimum, the standard of care required close follow up, within three days, and not "prn" or as needed. (*Id.* at 60). Because Defendant did not do any of these things, Plaintiff Medina's "deep tissue infection was not diagnose[d] earlier, and ultimately, a more extensive and difficult to treat necrotizing fasciitis developed." (*Id.*)

Plaintiffs also submit the report of Daria Majzoubi, M.D. (ECF No. 62 at 45-50).[10] Dr. Majzoubi states that "any reasonable primary care physician would doubt whether the patient's assessment of a 'pull of his hamstring' is actually valid, rather than merely what the patient suspected simply because he had pain in that area of his leg." (*Id.* at 46). Further, Dr. Majzoubi critiques Defendant's progress notes because, despite examining and touching Plaintiff Medina's leg, Defendant did not make any comment about whether Plaintiff Medina's skin was red in appearance (erythematous), warm to the touch, or bruised (ecchymotic). (*Id.* at 47). According to

---

[10] Plaintiffs' opposition includes a second copy of Dr. Majzoubi's rebuttal expert report. (ECF No. 62 at 51-55).

Dr. Majzoubi, Defendant "could have easily said 'skin is non-erythematous' and 'not warm to touch,' which would have ruled out any infectious etiology" as these are "two critical components in ruling out cellulitis or an infection of the limb." (*Id.*) Dr. Majzoubi asserts that Defendant did not assess these symptoms even though Plaintiffs "both report that not only did Mr. Medina have a red appearing leg which was warm to touch, he also had a swelling on the posterior aspect of his leg, which was not assessed." (*Id.*) According to Dr. Majzoubi, a patient who presented with Plaintiff Medina's same pain symptoms and "no history of trauma or injury" to the leg should be assessed for several life/limb threatening conditions, including DVT (deep vein thrombosis), cellulitis/abscess, MRSA, myositis/muscle necrosis, hematoma, and compartment syndrome. (*Id.* at 47-48). A physician concerned about a patient in acute stress would have sent the patient to the emergency room for further evaluation or recommended that the patient follow up in a few days, but Defendant wrote only that follow up would be "PRN" or as needed by the patient. (*Id.* at 48).

Dr. Majzoubi's report also states that Dr. Johnson "cannot conclude that Mr. Medina's [right] leg could not have been infected if there was no comment by [Defendant] about the appearance of the patient's skin overlying his [right] leg, or any comment about the presence or absence [of] the skin's 'warmth to touch' in [Defendant's] notes." (*Id.*). As for Dr. Posalski's report, Dr. Majzoubi asserts that "[m]ost physicians who treat patients for cellulitis or cellulitic abscesses of a limb, early on, do not seek the consult of an infectious disease specialist" unless the condition does not respond to antibiotics or treatment and is difficult to treat or control. (*Id.* at 48-49). Further, "[m]ost patients who present to a [p]rimary [c]are [p]hysician with [c]ellulitis improve with antibiotics and do not progress to necrotizing fasciitis, extensive cellulitic abscess, extensive soft tissue [n]ecrotization and the need for hospitalization or extensive surgical debridement of the leg." (*Id.* at 49). Thus, because Dr. Posalski is an infectious disease specialist, he does not routinely see "the natural history of most properly diagnosed and treated cases of outpatient cellulitis/abscess of a limb, since he usually does not treat such patients early on." (*Id.*). According to Dr. Majzoubi, if an ultrasound had been ordered to rule out the possibility of abscess, hematoma, or DVT, "it would have shown a deeper abscess and a much smaller and more manageable incision [and] [d]rainage would have been needed, and no surrounding damage to the surrounding tissue would have ensued as most abscesses, even deep ones are well

circumscribed, or only a small drain would have sufficed, and would not have ballooned to necrosis of the surrounding tissue etc." (*Id.*)

### D. Defendant's Reply

Defendant argues Plaintiffs' expert reports are inadmissible hearsay because the reports were not submitted with a sworn declaration or attached to an affidavit that conforms with Federal Rule of Civil Procedure 56(c)(4). (ECF No. 63 at 2-4). Because Plaintiffs' expert reports are inadmissible, Defendant contends the material contained in the reports cannot be used to create a triable issue of fact and requests that the Court strike the expert reports of Dr. Majzoubi and Dr. Needham. (*Id.* at 4). Defendant further argues that Dr. Majzoubi's report contains opinions beyond the issue of causation and misstates Dr. Posalski's opinions. (*Id.* at 5). Additionally, Defendant objects to Plaintiffs' photographic evidence as irrelevant because Plaintiffs do not use the photographs to support any of Plaintiffs' disputed facts. (*Id.* at 6).

## III. EVIDENTIARY ISSUES

Although Defendant raised several objections to Plaintiffs' expert reports, most of those objections have been resolved by Plaintiffs' submission of amended expert reports, which have since been accepted by the Court for consideration in this motion for summary judgment. (ECF No. 71).

 In its reply, Defendant also asks to strike portions of Dr. Majzoubi's report to the extent they rebut opinions contained in Dr. Johnson's standard of care report, in addition to those in Dr. Posalski's causation report. (ECF No. 63 at 2-6). Defendant's argument rests on the Court's minute order extending time for Plaintiffs to submit Dr. Majzoubi's report, which stated in relevant part, "Plaintiff's rebuttal expert designation [as to] Defendant's Expert Posalski due by 5/19/2023." *See* ECF No. 38. While Defendant argues that Dr. Majzoubi's report is thus not truly a rebuttal report, in fact Defendant's argument amounts to one of timeliness – that the extension of time was granted for Dr. Majzoubi to oppose only Dr. Posalski's report, rather than to provide a rebuttal report to Defendant's expert reports generally.

The Court does not recommend striking portions of Dr. Majzoubi's report on this basis. Dr. Majzoubi's report is a valid rebuttal report in that it rebuts expert opinions already offered by Defendant's experts, including Drs. Johnson and Posalski. It thus does not improperly offer

opinions on a topic not previously raised by Defendant. Moreover, while the Court's minute order extending the deadline to file Dr. Majzoubi's report referred only to Dr. Posalski's report, the Court did not intend to preclude Dr. Majzoubi from also including opinions rebutting Dr. Johnson's report. Indeed, Plaintiff's motion for an extension of time to file Dr. Majzoubi's report only discusses the difficulty obtaining the necessary retainer for Dr. Mazjoubi, and is not specific to the subject matter of the opinion or the need to address solely Dr. Posalski's report. The Court thus declines to recommend striking portions of Dr. Majzoubi's report on the basis that they rebut opinions Defendant previously offered through by Dr. Johnson.

Defendant also asks that Plaintiff's photographic evidence be stricken because it is not relevant to the issues in the summary judgment motion. While the Court agrees that the photographs are not probative to the questions of the standard of care or causation, it does not recommend striking them. However, they are not considered in the analysis below.[11]

## IV. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

[11] Defendant also made numerous objections to Plaintiffs' Statement of Disputed Facts and supporting evidence. (ECF No. 63-2; *see also* ECF No. 63 at 7). Because the Court considered only the facts set forth in Defendant's Statement of Undisputed Facts that were also explicitly undisputed by Plaintiff, the Court declines to rule on these objections. However, nothing in this order precludes the parties from moving to exclude evidence at trial.

any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). If the moving party does so, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial," which is not a light burden, the party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citation omitted); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-323. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (citations omitted). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the Court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). And "[t]he evidence of the non-movant is to be believed." *Anderson*, 477 U.S. at 255 (citation omitted). In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties but is not required to do so. Fed. R. Civ. P. 56(c)(3); *see also Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("Though the court has discretion in appropriate circumstances to consider other materials, it need not do so.")

**V.    DISCUSSION**

   **A. Medical Negligence**

In an action brought under the FTCA, the law of the state where the injury occurred is

controlling. *Carlson v. Green*, 446 U.S. 14, 23. Under California law, "[t]he elements of a cause of action for medical malpractice are: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage." *Chakalis v. Elevator Solutions, Inc.*, 205 Cal. App. 4th 1557, 1571 (2012) (internal quotation marks and citation omitted).

### 1. Standard of Care

The standard of care in a medical malpractice case "can be proven only by expert testimony." *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988) (citing *Landeros v. Flood*, 17 Cal.3d 399, 408 (1976)). However, expert testimony is not required when the professional medical conduct required in the particular circumstances is within the common knowledge of a layperson. *See Flowers v. Torrance Memorial Hospital Medical Center*, 8 Cal. 4th 992, 1001 (1994) ("The classic example, of course, is the X-ray revealing a scalpel left in the patient's body following surgery." (citation omitted)). "When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." *Munro v. Regents of Univ. of Cal.*, 215 Cal.App.3d 977, 984–85, 263 Cal.Rptr. 878 (1989) (quoting *Hutchinson*, 838 F.2d at 392; *see also Hutchinson*, 838 F.2d at 393 (holding that California's expert evidence requirement for medical malpractice cases "is equally applicable when a defendant moves for summary judgment under Federal Rule of Civil Procedure 56").

Here, Defendant submits the expert declaration of Dr. Johnson, who opines that Defendant did not violate the standard of care by diagnosing Plaintiff Medina with a muscle strain rather than an infection. As a basis for his opinion, Dr. Johnson points out that Defendant's examination of Plaintiff Medina revealed he was in no acute distress, with his right leg appearing "grossly normal." (ECF No. 52-3 at 3). Additionally, Plaintiff Medina reported a hamstring injury one week earlier, further indicating the problem was musculoskeletal in nature. In response, Plaintiff submits an expert declaration from Dr. Needham opining that Defendant's treatment of Plaintiff Medina fell below the standard of care. Specifically, Dr. Needham opines that Defendant should

have considered the risk of a deep tissue infection and ordered diagnostic testing given Plaintiff Medina's history of diabetes and because Defendant's physical exam of Plaintiff Medina noted extreme pain and revealed tenderness over the entire hamstring, which are symptoms inconsistent with a muscle strain. Additionally, Plaintiff submits the report of Dr. Majzoubi, which opines in response to Dr. Johnson's report, "Dr. [Johnson] cannot conclude that [Plaintiff's] R. Leg could not have been infected if there was no comment by [Defendant] about the appearance of the patient's skin overlying his R. Leg, or any comment about the presence or absence [of] the skin's 'warmth to touch' in [Defendant's] notes." (ECF No. 62 at 48). Dr. Majzoubi's report also states that a reasonable physician would have sought to rule out more serious conditions given Plaintiff's symptoms and history.

In light of this conflicting evidence, the Court finds that Plaintiffs have raised a genuine dispute of fact as to whether Defendant failed to meet the applicable standard of care.

### 2. Causation

"In a medical malpractice action the element of causation is satisfied when a plaintiff produces sufficient evidence to allow the jury to infer that in the absence of the defendant's negligence, there was a *reasonable medical probability* the plaintiff would have obtained a better result." *Espinosa v. Little Co. of Mary Hosp.*, 31 Cal.App.4th 1304, 1314–15 (1995) (citation, omitted citation signal, and internal quotation marks omitted) (emphasis in original); *see also Simmons v. West Covina Medical Clinic*, 212 Cal.App.3d 696, 702 (1989) (affirming grant of summary judgment for physician because plaintiffs could only demonstrate a 20% chance that alleged negligent act caused the harm, which does not meet the requisite reasonable medical probability test of proximate cause). Demonstrating such causal connection requires a showing of a "reasonable medical probability based upon competent expert testimony." *Simmons*, 212 Cal. App.3d at 702 (internal quotation marks omitted) (quoting *Jones v. Ortho Pharmaceutical Corp.*, 163 Cal.App.3d 396, 402 (1985) ("The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony.")).

Here, Defendant submits the declaration of Dr. Posalski, who opines that Plaintiff

Medina's "infection was not treatable with oral antibiotics as of February 8, 2019, because of its deep location in the leg," and "Mr. Medina would have required IV antibiotics and irrigation and debridement regardless of when the infection was first appreciated." (ECF No. 52-4 at 5-6). In response, Plaintiffs have submitted the rebuttal expert report of Dr. Majzoubi, who opines that, if Defendant had properly diagnosed Plaintiff with an infection, Plaintiff Medina would have needed "a much smaller and more manageable incision & [d]rainage" and there would have "no surrounding damage to the surrounding tissue . . . as most abscesses, even deep ones are well circumscribed, or only a small drain would have sufficed, and would not have ballooned to necrosis of the surrounding tissue, etc." (ECF No. 62 at 49).

Thus, Plaintiffs have presented evidence that, had Defendant diagnosed Plaintiff Medina with an infection during his February 8, 2019, visit, Plaintiff would have obtained a better result because he would not have required the same extent of surgical intervention, and the infection would not have worsened to the same extent. Drawing all reasonable inferences in Plaintiffs' favor, the Court finds there is a potential genuine dispute of material fact as to causation. *See Lemire v. California Dept. of Corrections and Rehabilitation*, 726 F.3d 1062, 1080 (9th Cir. 2013) (considering Eighth Amendment failure to protect claim and observing that, "If reasonable persons could differ on the question of causation then summary judgment is inappropriate and the question should be left to a jury.") (internal quotation marks and citations omitted); *see also Jennings v. Palomar Pomerado Health Systems, Inc.*, 114 Cal.App.4th 1108, 1118 (2003) ("[A]lthough plaintiff need not eliminate any possibility that defendant's conduct was not a cause, he must introduce evidence from which reasonable [people] may conclude that it is more probable that the event was caused by the defendant than that it was not." (internal quotation marks, brackets, and citation omitted, second alteration in original)).

Based on the foregoing, the Court finds that Defendant is not entitled to summary judgment on Plaintiff Medina's claim for medical malpractice.

### C.     Lack of Informed Consent

Defendant argues that she is entitled to summary judgment on Plaintiff Medina's lack of informed consent claim because the claim fails as a matter of law. Specifically, Defendant argues

14

that Plaintiff Medina cannot establish that Defendant owed a duty to advise him of the risks of treatment (or the risks of not undergoing such treatment) that Defendant did not recommend, or that carried minor risks. Plaintiff Medina primarily argues that his lack of informed consent claim rests on the same grounds as his medical malpractice claim, i.e., if Defendant had met the proper standard of care, Plaintiff Medina would not have required such extensive medical intervention.

Under California law, "a physician has a duty to disclose to the patient all material information—that is, information which the physician knows or should know would be regarded as significant by a reasonable person in the patient's position when deciding to accept or reject a recommended medical procedure—needed to make an informed decision regarding a proposed treatment." *Arato v. Avedon*, 5 Cal.4th 1172, 1186 (1993) (citing BAJI No. 6.11) (internal quotation marks omitted); *see also Cobbs v. Grant*, 8 Cal.3d 229, 243 (1972) ("[T]here is a duty of reasonable disclosure of the available choices with respect to proposed therapy and of the dangers inherently and potentially involved in each."). Material disclosures may include information regarding the danger of failing to undergo diagnostic testing. *Truman v. Thomas*, 27 Cal.3d 285, 292-95 (1980). "California courts have made clear that a *Truman* duty to disclose is not triggered until the physician actually recommends a treatment or a diagnostic procedure to the patient." *Edmunds, ex rel. Edmunds v. Pattachinda*, 1999 WL 170777, at *1 (9th Cir. Mar. 23, 1999) (citing *Vandi v. Permanente Med. Group, Inc.*, 7 Cal.App.4th 1064, 1068-69 (1992); *Scalere v. Stenson*, 211 Cal.App.3d 1446, 1450 (1989)); *see also Parris v. Sands*, 21 Cal.App.4th 187, 193 (1993) ("Generally, appellate courts have rejected a general duty of disclosure concerning a treatment or procedure a physician does not recommend.") (citation omitted); *Jamison v. Lindsay*, 108 Cal.App.3d 223, 231 (1980) ("Negligent failure to advise a patient to pursue a potentially necessary course of treatment is actionable under ordinary medical negligence standards.").

"There must be a causal relationship between the physician's failure to inform and the injury to the plaintiff. Such causal connection arises only if it is established that had revelation been made consent to treatment would not have been given." *Cobbs*, 8 Cal.3d at 245. The test for causality is objective, i.e., "what would a prudent person in the patient's position have decided if adequately informed of all significant perils." *Id.* (citation omitted).

Here, Plaintiffs' theory of liability is that Defendant failed to disclose the risks of not undergoing further diagnostic testing. (*See* ECF No. 62 at 27-30). However, that theory of liability is "actionable only under ordinary negligence standards." *Edmunds*, 1999 WL 170777, at *1 (citing *Vandi*, 7 Cal.App.4th at 1070 ("If the procedure is one which should have been proposed, then the failure to recommend it would be negligence under ordinary medical negligence principles and there is no need to consider an additional duty of disclosure.")). Defendant instructed Plaintiff Medina to ice his leg, referred him to physical therapy, and prescribed crutches and medication for pain. Aside from arguing that Defendant should have ordered further diagnostic testing consistent with the standard of care, Plaintiffs do not argue that there was any risk associated with Defendant's recommended course of treatment that Plaintiff was not informed of. Accordingly, the Court finds that Defendant is entitled to summary judgment as to Plaintiff Medina's lack of informed consent claim.

### D.     Loss of Consortium

"A cause of action for loss of consortium is, by its nature, dependent on the existence of a cause of action for tortious injury to a spouse." *Hahn v. Mirda*, 147 Cal.App.4th 740, 746 (2007). The claim "stands or falls based on whether the spouse of the party alleging loss of consortium has suffered an actionable tortious injury." *Id.* (citation omitted). A loss of consortium claim consists of four elements: (1) a valid and lawful marriage between the plaintiff and injured person, existing at the time of the injury; (2) a tortious injury to the plaintiff's spouse; (3) loss of consortium suffered by the plaintiff; and (3) that the loss was proximately caused by the defendant's act. *Id*. at 752 n.2 (citation omitted).

Defendant disputes that Plaintiff Medina suffered a tortious injury, and thus, Plaintiff Krivencheva's loss of consortium claim must fail. However, as explained above, the Court finds that Plaintiffs have raised triable issues of fact as to Plaintiff Medina's medical negligence claim. Accordingly, the Court finds that Defendant is not entitled to summary judgment as to Plaintiff Krivencheva's loss of consortium claim.

### VI.    CONCLUSION & RECOMMENDATION

Based on the foregoing, IT IS RECOMMENDED that:

1.     Defendant's motion for summary judgment be granted, in part, and denied, in part

as follows:

    a.    Defendant be granted summary judgment to the extent she seeks dismissal of Plaintiff Medina's lack of informed consent claim.

    b.    Defendant be denied summary judgment to the extent she seeks dismissal of Plaintiff Medina's medical negligence claim and Plaintiff Krivencheva's loss of consortium claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The objections shall not exceed more than fifteen (15) pages, including exhibits. Any reply to the objections shall be served and filed within thirty (30) days after service of the objections.

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 22, 2024**      /s/ Erica P. Grosjean
                                                UNITED STATES MAGISTRATE JUDGE